Good morning. May it please the Court, my name is Paul Sala along with Leslie Hendricks. We are here to represent Maureen Gaughan, the Chapter 7 bankruptcy trustee in the bankruptcy case of Rochelle Costas. If the Court pleases, I would like to retain five minutes for rebuttal. Is, let's see, you representing? The bankruptcy trustee. The bankruptcy trustee. In your honor, this case essentially is the first circuit to take a look at the question of whether an inheritance or disclaimer of an inheritance can be avoided as a fraudulent transfer under the bankruptcy laws since the Supreme Court decision in Drey. I wonder why that cannot be distinguished. In that one, the disclaimer came too late, it looks like. It looks like I think the disclaimer came after the bankruptcy was declared in that case. Not in Drey, your honor. In Drey, what occurred was Mr. Drey received a right to an inheritance. At the time he received the right to an inheritance, there was a federal tax lien in place against him. Before he received any property, he executed a proper disclaimer under Arkansas law. The property then fell to his daughter who then put it into a trust. Subsequently, when Mr. Drey advised the IRS in connection with their collection actions that he didn't have any property, that he had disclaimed the property, the IRS, I believe, levied against the bank accounts of the trust. Did he and his daughter enjoy a statute like the Arizona statute that related back the disclaimer so that he never got any title in the first place? Yes, it did, your honor. And it's a similar statute in most cases. I'm not aware of any state that has a different statute. It should really be the lien had attached. Well, and that is the argument that's made in some of the subsequent bankruptcy level cases, and that is the argument, I think, that the appellee in this case makes, that something special under tax law occurred that this lien attached so that the disclaimer was no longer effective. We disagree with that. We think what occurred here, your honor, is the Supreme Court recognizing that there is a specific right that a party entitled to an inheritance has, and that is the right to disclaim, the right to make the decision to keep or give away the property. However, there are some differences. Number one, the tax lien in Dyer or Dye. Dryer. Dryer. Whatever you, however. I have a tough time with names. I wasn't sure this was gone until you. I heard him say it, but I was waiting for you. I just made it up. The tax lien was already in place at the time of disclaimer in that case, and the lien was not in place here, correct? Correct, your honor, but it's not really a lien here. What you have is essentially two reachback statutes. You have the state reachback statute, which is the disclaimer statute, but you also have something unique in this case, and that is under section 548, a federal bankruptcy reachback statute. And what that statute says is a bankruptcy trustee, now it's two years, but at the time of this case it was one year, can go back in time one year and grab property or seek to avoid transfers that are made. What we're saying is that reachback. But that reachback that you're talking about in the bankruptcy action does not come up until the bankruptcy has been filed. Whereas the Arizona statute is forever encompassing. They can disclaim, it's as if they never had the property in the first place. Never had the property, but your honor, it's not that they never had the right to disclaim. Well, but we're really talking about whether you're going to get property in your bankruptcy estate. We are, but not that directly. What we're saying, your honor, is that under section 548, there's an expansive right granted to a trustee under federal law, and that right is to go back in time and look and avoid transfers for the benefit of all creditors. Let me ask you a question. This doesn't happen when we're talking about estate taxes. About estate taxes? When you have an estate for an estate tax, you make a disclaimer. If you make the disclaimer in an estate tax situation, you don't put the property in the estate. In other words, it's not taxed. Correct, your honor. And so why should I, in that situation, it says it this particular situation that you cite, the Supreme Court says the tax lien is. Now I'm looking at setting up another estate. We're really talking about an estate here. Why should I not take the estate tax situation as good example for me what to do in this case? If they make the disclaimer, why not allow them the same thing that the estate tax allows them? Well, because of the fundamental purpose of the bankruptcy laws and the rights granted to a bankruptcy trustee. There's fundamental purposes in estate tax. One could say the same thing in an estate. The government's after taxes there. Well, but in the estate tax situation, the the the potential recipient says, I don't want this. I don't want to pay tax on it. Send it somewhere else. It was never mine. Same as in this situation. They've got the right to have it. They disclaim it. They can even disclaim it after death. And it's a matter of the state law that applies. But but there's a big difference there, Your Honor. In the estate tax concept, the grantor is the one who is taxed. So it doesn't matter whether it goes to this individual or that individual. Well, but ultimately, the taxman's going to get paid. That's what we're doing here. It doesn't matter whose estate it's in. One creditor is going to go after it or another creditor. We're either going to let the creditor of the one who has the disclaimer get it, or we're going to let the creditor of the one to whom it goes after the disclaimer get it. Either one, I'm protecting creditors. Well, I disagree, Your Honor, particularly if you look at the facts of this case. When Ms. Costas disclaimed this this interest, it went to her minor children. I seriously doubt they had any creditors who would make claims to this. All we're talking about is is exactly like in the estate tax situation. Whose creditors get a chance at it? Who gets the property? And now I have a pretty good, easy way, under federal law, for estate tax purposes, set up by the Congress, says if you disclaim, and it doesn't matter when it comes, as long as you don't have the property, it doesn't go into your estate. Why should I then, in a bankruptcy situation, take a different tax? Simply because the Supreme Court told me, and after all, they're only right because they're last. Even because the Supreme Court told me that a tax lien ought to apply. Well, first of all, it was a unanimous Supreme Court, so not only are they last, there are quite a few of them. Well, it doesn't matter. I always said that when I was on the district bench. I understand, Your Honor. The reason it should matter is because of what Congress has done separately by setting up federal bankruptcy laws. It deals with the bargain between the debtor. The lien seems to matter to me. In dry, you've got the lien that attaches to the individual, and the lien's already there. Then comes the death and the disclaimer. Liens are kind of metaphysical, and so is attachment of the lien to the property. So you really do have to look at what the property is the debtors prior to the declaration of bankruptcy. Once the bankruptcy is declared, secured creditors get the property that they have a security interest in, they're like the IRS with a lien. Except the trustee's interest didn't attach until the bankruptcy was filed. But the trustee's interest in certain instances, Your Honor, is greater than a secured creditor. For instance, if a secured creditor takes a security interest in lien and property prior to the bankruptcy on account of an antecedent debt, he comes into the bankruptcy with a lien. But the trustee, under the rights granted under Section 547, trumps that lien in a preferential transfer action, an avoidance action. Trustee reaches back and jumps over the lien. Section 548 is a similar concept. The trustee reaches back in time to a point in time where the debtor had something, a right to disclaim. Forget for a moment that the debtor didn't have the goods, in this case the interest in the house that was in Wisconsin. The debtor had this right to disclaim. And that right was valuable, and we know that because the Supreme Court tells us that. As soon as the debtor exercised that right, the debtor started a clock, and a clock back in 2002 was a one-year-long clock that said, if I file bankruptcy within the next year, I'm going to have a bankruptcy trustee looking at this, and just like the preference situation we just talked about, who can jump back in time to that very moment when this valuable right existed. And despite the fact that under state law, the property, the things, the rest, the property in Wisconsin was wiped out by the disclaimer, but you can step in time and kind of stop it. I'm trying to figure out exactly what dry means. I just hate it when judges use metaphors like the federal tax law is not struck blind by a disclaimer. We're not talking about vision. And I don't know what it means. What I think it means, Your Honor, is that an unintended consequence of disclaimer statutes were that creditors wouldn't be able to reach property that otherwise should be available for them. Not unintended. These kinds of technical statutes, lawyers and trust officers of banks lobby them in to accomplish a particular thing. But I believe in the disclaimer statutes it's for the estate tax situation, and it's because property has to vest somewhere to let people get rid of. And I do some work for bankruptcy trustees. The most typical thing is you are taking care of a family and the husband dies and the widow is well provided for, so she disclaims as much as she can to avoid a tax on a second death when she dies. I think that's the primary situation. The other is if you're a bankruptcy trustee and you inherit a bankruptcy case or you're a recipient under a will and you recover land like Love Canal, you don't want that land and you want to be able to disclaim it before you take on the environmental liability. But there's nothing in any of the cases that would seem to indicate that. That's a very interesting example. It looked like that dry case was really protecting the IRS. What happens in those environmental disasters where the last thing you want to do is own the land? Does the disclaimer work? I believe it works, and I think the EPA and the Superfund statutes take you back to whoever was last in title and then everyone before. So the disclaimer works to avoid inheriting the environmental liability? I believe it does, Your Honor. Well, don't we really, in dry, kind of get into a dichotomy of definition when we're talking the term property? Because it seems to me that the tax lien property analysis differs from the more state law-oriented bankruptcy analysis of the word property. I'm not sure I agree with that, Your Honor. The term property for the purpose of this case comes up in Section 548, where it says the bankruptcy trustee may avoid any transfers of property in the year before the bankruptcy, and the law is now two years. There's much discussion, particularly in Appellee's brief, about Section 541 of the Bankruptcy Code, which talks about property of the bankruptcy estate. There's plenty of case law that says, in the context of a bankruptcy case, the concept of property and property of the estate is incredibly broad, similar to the language used by the Supreme Court in dry. Here, we're taking that broad thought process that property in a bankruptcy is everything. The trustee needs to be able to get everything for the creditors, because, quite frankly, that's what the debtor bargains. The debtor's getting a discharge. The debtor doesn't have to pay their debts. But what the honest debtor has to do is turn over whatever is non-exempt to the creditors so that they get their pro rata share, and you close the case. Well, one thing a debtor does, suppose I was about to give one of my kids a large cash gift, and my kid told me, Dad, don't do it. I'm about to file for bankruptcy. You're just giving the money to my creditors. And I didn't give them the gift. They couldn't reach to that. They couldn't because there was never an interest in property. The difference here, Your Honor, is Disclaimer. Why isn't the disclaimer like the gift that my kid talked to me out of giving? It may be as to the underlying property, but it's not as to the right. Because what happens, unlike your child who says, Dad, no thanks. I don't need it. You never gave it to him. If instead you gave your son $10,000. Probably had a regular gift-giving program in order to reduce my estate, in order to reduce estate costs. But let's say you gave your son $10,000, and he said, oh, Dad, thanks. I just realized I need to file bankruptcy. And he gives it back to you? Under the bankruptcy laws? When he gives it back to me, that's It allows me to get that back. When he gives it back to me, it's a preference. I agree with you there. It's actually a fraudulent transfer because you weren't a creditor. Yes. You're right. I don't think either of my sons would give it back. Well, my worry is this. My colleague brings up the exact question that I had down here in my notes. If I say to someone, I'm going to give you $10,000 a year forever, unless you tell me I'm not going to give it to you, and I don't put it in writing, then at that point, the bankruptcy trustee never gets it. It depends, actually. Well, it depends on if they can get me to swear under oath that that's what I said. And I know you did. Okay. But the problem is, is that in writing, then, by putting this in writing so we can determine what the situation is and try for estate tax purposes or whatever, which is generally why this is used, then we're going to take a different approach. Because in effect, what you're really saying is, anything put in writing, if I go the way you want me to go, the disclaimer itself becomes a property interest. And yet, that property interest is not recognized in the estate for estate tax purposes. That property interest isn't recognized in any of the property actions that we have in Arizona or other states. Only in this instance. And where there's a tax lien already filed, and then they don't do anything. Then they try to do something about it. Those are the only instances where we come there. I guess I'm trying to figure out, why should I increase the law to that extent to go for that? What is the good reason? Well, I'm still not convinced that one creditor is any better than another. You've either got a creditor of the one who's now in bankruptcy or the creditor of the kid. Either one of the creditors gets that stuff to go after. All I'm trying to do is suggest which creditor is more important. And I would suggest, Your Honor, that at the time the bankruptcy is filed and a trustee is appointed, the creditors of that debtor are most important as to any property right that that debtor had, particularly in the last year. And do I find that in Congress any place in the statute? Because my worry is that in bankruptcy code situations, Congress has generally left the determination of the property rights and the assets to the state law. They have, but the Supreme Court says even under state law, there's a right to disclaim. And if there's this right to disclaim, you have to recognize the right of the trustee under Section 548. And I think the estate tax disclaimer issue, that's an exception that was made for a tax purpose. And I'm not a tax lawyer. I don't pretend to be one. And I don't know anything about taxes. So I don't know why they did that. But that seems to me to be the exception. Really, what the rule should be is individuals But an exception based totally on state law? Understood. But the rule ought to be that an individual who's taking advantage of the bankruptcy laws should not be able to move property away. We don't let them do it as to preferential transfers. We don't let them do it as to the $10,000 exchange we talked about. We don't let them do it post-petition. In the supplemental case we cited, Schmidt talked about the post-petition disclaimer. If there's no right to disclaim once the disclaimer occurs, then why did the debtor in Schmidt not be entitled to do that? By conceptualizing this right, what really matters is that there is indeed a right. And the right to disclaim is also the right not to disclaim. And what you're saying is, this bankruptcy estate succeeded to the debtor's interest in a right. Gets to revisit that right. The exercise of that right. That's correct. And I have a minute and a half I'd like to save, if I may. Well, Counsel, I think I read Drey a bit differently than you. It seemed to me that the Drey court actually disregarded the relation back doctrine in its entirety. As to the right to disclaim. Because what they're saying is, because the debtor had a valuable right, and at the time the debtor had the valuable right, the IRS tax lien was already in place, that the tax lien attached to the right, and the disclaimer then couldn't be effective to relate back because the lien was already there. It was as if a lien got put on a piece of property before it was transferred, the transferees stuck with the lien. Given that we had all of this law prior to Drey, and it all went the other way, and now we come to the Supreme Court, who now says we're going to go this far, is there any reason for me to stray from the prior law on anything further than what the Supreme Court told me? I think there is, Your Honor, because the body of case law that is out there, supposedly, it really emanates from three cases. One, the Hockner case, which is a Tenth Circuit case from 1973, and then it was basically followed by Acheson and Simpson, where by the way, the debtor there was Homer Simpson. Those cases is what led to everything else, and everything else ignored Drey. If you look at the Schmidt case and the analysis there by Judge Clark, a very respected bankruptcy jurist, he kind of lays it out. It's very difficult to grant a trustee a right under 548 to avoid transfers for creditors, to stand and entertain this state court fiction that it all relates back and they can't get it. Think of what that does in the grand scheme of things. It gives people a reason to disavow assets that should be there for creditors, and I don't think that's what the bankruptcy laws are there for. Thank you, Counsel. And I won't have a chance to reply, so thank you, Your Honor. Thank you. If it please the Court, Mark Bregman appearing on behalf of the appellee and the debtor in the bankruptcy case. Counsel, I'm finding this a hard case, and let me just tell you why so you can educate me. It seems to me that applying usual federal law principles of determining property interests under state law, the relation back is fine and you win. The debtor here is treated as though she pre-deceased, as I recall the law, the person that left her the property, so she never inherited a thing. However, the logic of dry pays some verbal obeisance to state law and then totally ignores it. I'm kind of wondering, in view of the weight of all the pre-dry cases, whether we should just say, well, dry is just for federal tax liens and nothing else. That has some appeal because of all the law to the contrary. On the other hand, I can't find anything in the logic of dry that invites us to do that. How do we deal with this? Well, here's, I think, the answer to that. First, no one is obligated to accept an inheritance. And the Love Canal example is a perfect example of completely off the topic why you would want to do that. Creditor problems without a bankruptcy case is yet another reason. Bankruptcy planning is another. Just benefiting the children is yet another. So there's plenty of reasons to do that. The appellant is created, and you've mentioned this right to disclaim, but that right to disclaim was gone already at the time. If you want to go on right to disclaim analysis, that has to come under 547, the preference statute, and this is the case under 548, the fraudulent transfer statute. So that whole right to disclaim argument really doesn't help us. But directly to your point about dry, even in the dry case, in footnote 3, the right to disclaim argument is gone already. The Supreme Court cited to, and it's on page 3 of my reply in the original motion for summary judgment, and I'm sorry I don't have the excerpt noted, but they cited Jeff Pennell, who's an Emory law professor that lectures extensively on the estate tax, and he points out in an article in 1997 that the qualified disclaimer provision in 2518 of the federal tax code is in subchapter B, and this is in subchapter F, and this was the thing Judge Smith was talking about, that dry has got to be strictly limited to the collection of federal taxes and the lien rights. And we bring that back into this argument this way. So you're saying it is just about taxes, and the partner means? It has to be. If it isn't taxes, follow state law. It has to be limited to taxes because the IRS has that super creditor, and we know that's true because even within the bankruptcy code, for instance, they look to the state law for exemptions. For example, in Arizona, qualified plans, IRAs are exempt from the bankruptcy code, or from the trustee, the debtor gets to retain their interest in an IRA. It's considered not an asset of the estate at all under bankruptcy law, and that's because of the state law exemption. Under the lien statutes in subtitle F of the tax code, it's not exempt. The IRS, if they're going to collect taxes, they can co-collect it from IRAs and from 401Ks, not exempt in most circumstances for that. So we have that example in the federal law where they recognize that the IRS is a super creditor and can reach all of those property interests, notwithstanding what the state law says. In this footnote 3 in dry, what was section 2518 that they were referring to? Section 2518 is a reference to the Internal Revenue Code, the qualified disclaimers. So that's the tax code that says if you disclaim within nine months, then it's not going to be part of the decedent's estate for purposes of the second estate with the old widow. Or pass it to a third generation. It goes either by intestacy, and it follows the old Arizona law with respect to how it operates. But that's what Pennell's 1997 article was talking about, showing that even within the tax code, there's some instances where we are going to reach that property, but there's other instances where we're not. So what you're saying is that we should read that footnote as an invitation to limit dry to federal tax liens for delinquent taxes? That's true. And I would suggest to you that every court that has examined that where the state law says that there's a relation back, and that would be the Oregon case, that's the Nistler case that reinterpreted our Bright case, the Ninth Circuit BAP case that was pre-dry. The Nistler case, which was an Oregon bankruptcy case after dry, said no, dry doesn't apply, it's limited to its facts, number one. And then the case that didn't do that was the Iowa case, the Klobuch case, but of course the Iowa law doesn't have that relation back statute, and they've already said that under state law, a pre-petition disclaimer doesn't protect it, and that is a fraudulent transfer. I'm always a little scared of reading a Supreme Court decision as, well, this is a really off-base decision, so I'll limit it to its facts. It's kind of an invitation to cert, but I think what you're telling me is that footnote three says I should. Have I got that right? Well, I don't think, limit it to its facts. I mean, I would have to say, yes. Not limit it to its facts in that case, but limit it to federal tax liens for disclaimants, delinquent taxes. Well, that's right. In dry, they were presented with a federal tax collection case, and they analyzed federal tax collection cases, and they came to a result. This case should never have been used in the bankruptcy context at all, and in fact, the one court that has interpreted and accepted it has found, they would have found the same way even without dry, because in Klobuch, they already had the state law. I guess in the text, before you get to footnote three, the way the IRS reasons is from a negative pregnant. They say that Congress knows all about disclaimers, and in fact, it sometimes provides for them, like in 2518, but it didn't hear, so it must have decided not to on purpose. What is the analog or lack of analog in the bankruptcy law? Well, in the bankruptcy code, there's a statute that says that if a debtor in bankruptcy receives an inheritance within 180 days after filing, that that property becomes property of the estate, and in that case, what the bankruptcy trustee gets in addition to the inheritance is the right to disclaim. Of course, I can't cite any examples to you where a bankruptcy trustee would exercise that right, but in that case, they step into the shoes, and they would have the right, but ... Polluted property. Polluted property. There's your ... They'll be disclaiming. They do in Idaho. Sure, sure, of course, but so there's ... You're saying there's a negative pregnant that ... Well, there's an example in the bankruptcy code of an expansion of state law property rights, because at the time of filing, in the bankruptcy code, the definition of property there's a very expansive definition of what is and what of what is property in 501, and here they're saying, in addition to those property rights under state law, here's some more property rights that we're going to give to the bankruptcy trustee. I would suggest to you that doesn't make any sense from the context that the bankruptcy trustee and the bankruptcy trustee, and it's a windfall, but yet that case is fairly common. The debtor files a petition. Three months later, their papa dies, and they hadn't had that conversation that you suggested, that you take me out at least until the 180 days has passed, and that property passes. So there, Congress is going out of their way to keep the inheritance out of the estate. In the bankruptcy estate. It's in the bankruptcy estate if it happens within 180 days, and let me direct your attention also to the citations and the supplemental authority cited by the appellant, the Schmitt case, because I think they're reading the Schmitt case wrong. Part of that case that they've cited you to on page 324 says, granted, had she executed a disclaimer prior to filing, the disclaimer would have been effective as of the date of the commencement of the case to eliminate any interest she might otherwise have had as a beneficiary under her mother's will, because she would not have had a cognizable interest in property, either legally or equitably, as of the date of filing, thanks to the operation of section 37A of the Texas probate code. Now the Schmitt case is a post-petition disclaimer. In Schmitt, the case cited by the appellant, it's a district court case where the debtor's mother died, the debtor filed bankruptcy, and subsequently disclaimed the property interest. We all know what the result is in that case. They can't do anything to affect the interest after the filing date. Post-petition disclaimers, they've divested, the debtor does not have the right to do that. Query whether, in that case, the smarter move would have been to try to dismiss the case, depending on the size of the inheritance, but that's not what they did. They went through this mother died, debtor filed, debtor disclaimed, and the court said no. And so now the court is setting up the argument and the passage that I just read to you, and then it goes on to say that debtor argues that the Simpson rule, that's the Fifth Circuit case that allows the pre-petition disclaimer, which insulates pre-petition disclaimers from avoidance as fraudulent transfers, should operate in the same fashion to disclaimers executed post-petition. The argument fails, however, because it presumes that the state law can alter the temporal aspect of section 541A1. After Burgess, we know that is not and cannot be the law. And then this is the key misreading of Schmidt. It says, the Supreme Court's decision in Drey also supports this conclusion. And the conclusion that it's supporting is that post-petition disclaimers cannot be the right of the debtor, which brings us full circle back to your initial question about Drey, which in Drey, the fact pattern was the tax lien attached to the debtor's interest, and the debtor disclaimed the interest after the lien had already attached. That's analogous to a post-petition disclaimer, because the debtor — Not exactly. Not exactly. In Drey, the state law was similar. The debtor never owned the property. The debtor never had an interest in the property. The debtor had, on the tax lien, owned a right, and the right was to disclaim, which also implied a right not to disclaim. Actually, in Drey, the right was the taxpayer in Drey was aggrieved of a prior inheritance, and it entered into a contract that gave him a property interest in his mother's estate, and he transferred that existing contract right to himself as trustee for the benefit of his kids. And the transfer of that right to receive that inheritance took place after the tax lien had attached. So the Drey facts are completely all fours with a post-petition disclaimer, which we all know we wouldn't be here today if that had been the case. That law is clear. Post-petition disclaimers cannot be. Yet the trustee's argument is the very fact of these reach-back provisions in the Bankruptcy Code suggests that it does become like a post-petition disclaimer, because they can reach back for the amount of time necessary for the fraudulent disclaimer. And by reaching back, it is post-petition, because the reach-back starts the time running prior to the time of the disclaimer. That is his argument. That is his argument, and that argument has absolutely finds no support in Drey. That's the argument that's been discredited in the Fifth and the Fifth Amendment. That's wrong. That's not right. That the pre-petition disclaimer is a valid, in a relation-backed state, is a valid exercise of a power that's not subject to that 548. And again, I would suggest to you that if you want to analyze from the point of view of right to disclaim, you have to analyze it not under 548, which this case is here before you, but under 547, which is a preference claim. And that would be a more interesting... I understand your argument. Except that in this particular case, everybody's agreed that it's fraud. Isn't that in the facts? That it's done for a fraudulent purpose? No, no. No, what we've agreed in this case is that the disclaimer was validly executed. Oh, I thought we also agreed that there's no question the fraudulent elements of the 548 avoidance have been met. I never agreed to that. Never agreed to that? No. No, because there's no transfer, first of all. I had thought that what you were saying was analyze it under 548, the fraudulent conveyance statute. Don't analyze it under 547, the preference statute. Oh no, I'm brought by the trustee pursuant to 548. They haven't said this is a preference... I'm in. Okay, so they've said this is a fraudulent transfer under 548. Well, that's of course the federal avoidance provision here. Shouldn't we define property by use of federal law? Not under Butner, not under Barnhill. Property law is determined under state law. Well, that's exactly what Butner holds, I think. Excellent. That's right. And the reason it's not a fraudulent conveyance is, it's a big part, you're not admitting any fraud. The reason it's never owned the property. That's right. Under the Relation Back statute, and focus on what we seem to have picked up on this pollution issue, never property of the estate, the debtor never exercised. And understand, and maybe I should use my last couple of minutes to talk about disclaimers to this extent. One of the key elements of a disclaimer is that the person disclaimed has to do it in writing, has to do it within nine months, but also may not have accepted the benefit of the property prior to the date of the disclaimer. So in other words, I can't have taken a piece, I can't have inherited 100 shares of Microsoft stock and sold that stock and diversified it and done some other things with it all within the same account at Smith Barney and then at eight months say, oh, I'm going to file bankruptcy, so I'm going to disclaim my property. Once the future debtor has exercised dominion and control, she no longer meets the qualifications for a disclaimer. What she did, what the debtor did have was control over the right to disclaim. She did enjoy and use the right. But that's not the property that she inherited. The right to disclaim is a right that she had under state law. I mean, that's no any other right that's a pertinent to property, but it's not the property itself. And that's, and that's, and I guess I, okay. Thank you. Thank you, counsel. Thank you both. Thank you.
judges: Kleinfeld, Smith, Mills